**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

RAFAEL XENES, individually and on behalf
of all others similarly situated,

               Plaintiff,

    v.

POWUR, PBC, INC.

               Defendant.

Case No. 1:23-cv-22787-KMM

**<u>DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

## I.     __INTRODUCTION__

Plaintiff seeks to hold Powur liable under the Telephone Consumer Protection Act ("TCPA") and Florida Telephone Solicitation Act ("FTSA") for calls he allegedly received from a known, but unnamed third-party (Victor Hidalgo). Yet, Plaintiff's First Amended Complaint ("FAC," Dkt. No. 10) still fails to plausibly allege that Powur bears liability for those calls. Plaintiff's theory of liability turns on a single factual allegation which he contends connects Powur to the calls. Specifically, Plaintiff alleges that, following two calls on or about November 7, 2022 (at least one of which appears to have been made in direct response to Plaintiff's expression of interest), he purportedly received an email allegedly "contain[ing] information about Defendant's company" from an alleged "agent of Defendant named Victor Hidalgo at the email victorhparkersolar@gmail.com." FAC ¶¶ 32, 34. Plaintiff alleges that to the email were attached four documents, not attached to the FAC, that included the Powur logo and generic marketing language about Powur's offerings. *Id.* ¶¶ 34–38. Beyond this, Plaintiff merely concludes "upon information and belief" that the phone number from which the calls originated belongs to "Defendant and/or Defendant's agent." *Id.* ¶ 32. These vague and unsupported allegations are insufficient to support TCPA or FTSA liability and do not cure the fatal deficiencies in Plaintiff's original Complaint (Dkt. No. 1). Thus, Plaintiff's FAC should be dismissed in its entirety for at least the following reasons:

__First__, the Court should dismiss the FAC for lack of federal subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff has not met the requisite elements for Article III standing—specifically, causation and redressability. In this regard, Plaintiff fails to plead sufficient facts tracing his purported injuries to Powur or explaining how any relief from Powur will redress alleged injuries caused to him by third parties.

__Second__, Plaintiff fails to allege specific, non-conclusory facts supporting Powur's direct or

vicarious liability under the TCPA or FTSA, as required to state these claims. Specifically, he fails to plead facts supporting a plausible inference that: (i) Powur *itself*, as opposed to some unnamed third party, "physically" made the calls at issue, as required for direct TCPA or FTSA liability; or (ii) Powur had an agency relationship with and/or control over any third parties who made the calls alleged, as required for vicarious TCPA or FTSA liability. Courts routinely dismiss TCPA and FTSA claims in their entirety under Rule 12(b)(6) on these grounds alone.

**Third**, Plaintiff's FTSA claim in Count II should also be dismissed because Section 8(a) of the FTSA[1] is ***facially unconstitutional***. Specifically, Section 8(a) violates the dormant Commerce Clause of the U.S. Constitution because it has the practical effect of regulating commerce occurring wholly outside of Florida. Further, permitting Plaintiff to recover under both the TCPA and the FTSA for the same alleged injuries would amount to an impermissible double recovery.

**Lastly**, while the FAC should be dismissed for the reasons set forth above, the class allegations are so facially inadequate that certification cannot be granted as pled because, among other things, (i) the class definitions are fail-safe, and (ii) common questions of law and fact do not predominate. Thus, if the Court does not dismiss the FAC in its entirety, it should strike those improper allegations under Rules 12(f) and 23.

## II.      SUMMARY OF PLAINTIFF'S ASSERTED CLAIMS

On or around November 7, 2022, Plaintiff alleges he "received a prerecorded phone call from the phone number 607-566-6920" to his cell phone. FAC ¶ 32. Plaintiff contends, "[u]pon information and belief[,]" that this phone number "belongs to Defendant and/or Defendant's agent." *Id*. On this call, Plaintiff alleges that "Defendant" asked if Plaintiff was a homeowner and

---

[1] *See* Fla. Stat. § 501.059(8)(a), hereafter referred to as "Section 8(a)" unless otherwise specified.

Plaintiff answered "yes." *Id.* Plaintiff apparently "continued" with the call to determine who was calling him. *Id.* That same day, Plaintiff contends he received another call from the same number, but "this time from a live agent." *Id.* ¶ 33. Plaintiff answered this call and told "Defendant and/or Defendant's agent" that he would call to schedule an appointment. *Id.* After these calls, Plaintiff allegedly received an email from "Victor Hidalgo at the email victorhparkersolar@gmail.com." *Id.* ¶ 34. This email allegedly "contained information about Defendant's company" and included four attachments containing Powur's logo and general marketing language about Powur's offerings; the sender also included a request that Plaintiff send his electric bill. *Id.* ¶¶ 35–38. After receiving this email, Plaintiff contends he received several live calls from Victor Hidalgo from the number 619-704-2766. *Id.* ¶ 39. Plaintiff contends he told Mr. Hidalgo on multiple occasions he was not interested and to stop calling him, but continued to receive calls. *Id.* ¶¶ 39, 41-44. Plaintiff speculates that the purpose of these calls was to "attempt[] to sell Defendant's solar energy equipment." *Id.* ¶ 45. According to Plaintiff, he never provided Defendant his consent to be contacted and, even if he did, he revoked such consent. *Id.* ¶ 47. Plaintiff thereon concludes that Defendant "either acted directly or through an agent" with regard to these calls. *Id.* ¶ 52. Plaintiff also seeks to represent the following classes:

> The Prerecorded Voice TCPA Class: All persons within the United States who received any solicitation/telemarketing phone calls from Defendant to said person's cellular telephone made through the use of a prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

> The Florida TCPA Class: All persons within the State of Florida who received any solicitation/telemarketing phone calls from Defendants to said person's cellular telephone that included the playing of a recorded message and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

FAC ¶ 54.

### III.    APPLICABLE LEGAL STANDARDS OF REVIEW

#### A.    Rule 12(b)(1) – Lack of Subject Matter Jurisdiction (Standing)

A complaint is properly dismissed under Fed. R. Civ. P. 12(b)(1) where there is a lack of subject matter jurisdiction. *See Cherry v. F.C.C.*, 2009 WL 4668405, at *5 (M.D. Fla. Dec. 3, 2009) (citing *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n. 42 (11th Cir. 1991)). To establish Article III standing, Plaintiff must plausibly allege that: (i) he suffered a concrete and particularized "injury in fact," (ii) there is a causal connection between his injury and the conduct complained of (*i.e.*, causation), <u>and</u> (iii) his injury must be capable of being redressed by a favorable decision (*i.e.*, redressability). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 125 (2014). Additionally, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Like under Rule 12(b)(6), conclusory allegations are insufficient under Rule 12(b)(1). *See, e.g., Tomelleri v. Natale*, 2020 WL 5887151, at *2 (S.D. Fla. July 16, 2020); *see also Hicks v. Alarm.com*, *Inc.*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (dismissing TCPA case under Rules 12(b)(1) <u>and</u> 12(b)(6) because "[b]ased on the deficiencies identified under Rule 12(b)(6), Plaintiff also fails to properly plead causation and redressability" for Article III standing).

#### B.    Rule 12(b)(6) – Failure to State a Claim

Rule 12(b)(6) provides for dismissal where, as here, a plaintiff fails to sufficiently plead a claim for relief. A "bare assertion" and "conclusory allegation[s]" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, Plaintiff must "include factual allegations for each essential element of [his] claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). "[C]onclusory allegations, unwarranted factual

deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Dismissal under Rule 12(b)(6) is also appropriate where a statute giving rise to a claim is facially unconstitutional. *See, e.g., Harris v. Mex. Specialty Foods, Inc.,* 564 F.3d 1301, 1308 (11th Cir. 2009).[2]

IV.  **ARGUMENT**

   A.  **The FAC Should Be Dismissed Because Plaintiff Lacks Article III Standing.**

   To satisfy Article III causation, a plaintiff's "injury in fact" must be "fairly traceable" to the defendant's conduct. *Lexmark*, 572 U.S. at 125; *see also Lujan,* 504 U.S. at 560-61 (an injury is not fairly traceable to the defendant if the injury complained of is "th[e] result [of] the ***independent action of some third party*** not before the court") (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42 (1976)) (emphasis added). Here, Plaintiff failed to plead facts showing any conduct attributable to Powur, as opposed to third parties not before the court (i.e., Victor Hidalgo). *See* Section IV.B, *infra*. Plaintiff likewise fails to plead any facts from which the Court could infer that Powur had any relationship with Victor Hidalgo. *See id*. Consequently, any alleged "injury" Plaintiff may have suffered as a result of Victor Hidalgo's actions are not fairly traceable to Powur. Thus, Plaintiff lacks Article III standing and the FAC should be dismissed under Rule 12(b)(1). *See, e.g., Hicks*, 2020 WL 9261758, at *5 (holding that "[b]ased on the deficiencies identified under Rule 12(b)(6), Plaintiff also fails to properly plead causation and redressability" for Article III standing); *Barker v. Sunrun Inc*., 2019 WL 1983291, at *3 (D.N.M. Apr. 29, 2019) (ruling similarly); *see also Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208,

---

[2] *Cf. Creasy v. Charter Commc'ns, Inc.,* 489 F. Supp. 3d 499, 508 (E.D. La. 2020), *judgment entered*, 2020 WL 7646640 (Dec. 23, 2020) (dismissing under Rule 12(b)(1)).

at *8 (E.D. Va. Nov. 12, 2020) (holding that "[h]aving found that the contested calls are not fairly traceable to [the defendant] in the context of standing [under Rule 12(b)(1)], the Court also finds that [plaintiff] has not adequately pled facts under the [*Twombly*/]*Iqbal* pleading standards supporting direct or vicarious liability under the TCPA" under Rule 12(b)(6)).

Moreover, Plaintiff also has not shown his claims can be adequately redressed by Powur. Redressability means a non-speculative "likel[ihood]" that the injury alleged will be remedied "by a favorable decision." *See Lujan*, 504 U.S. at 560-61. In addition to statutory damages and other relief, Plaintiff vaguely seeks injunctive relief. *See* FAC ¶ 70. But because Plaintiff pleads no specific facts showing any conduct attributable **to** Powur, his injury is not capable of being redressed **by** Powur. Thus, Plaintiff also lacks Article III standing for this additional reason, and the Court should dismiss the FAC under Rule 12(b)(1) for lack of subject matter jurisdiction.[3]

### B. Plaintiff's FAC Does Not Allege Sufficient Facts to Support *Any* Theory of Liability Against Powur and Should Be Dismissed In Its Entirety.

To survive dismissal, Plaintiff must plausibly allege one of two potential theories of liability under the TCPA and/or FTSA against Powur: (1) direct liability; or (2) vicarious liability. *See Carson v. Home Depot, Inc.*, 2022 WL 2954327, at *5 (N.D. Ga. July 26, 2022). As shown below, Plaintiff does not plausibly allege either. Thus, his FAC should be dismissed.

#### 1. Plaintiff Fails to Plausibly Allege Direct Liability Against Powur.

Direct liability applies <u>only</u> to persons or entities that "make" or "initiate" calls in violation

---

[3] Of course, because Plaintiff "lacks standing to bring the asserted claims on his own behalf" against Powur, he also "lacks standing to represent a class asserting such claims." *Atkinson v. Wal-Mart Stores, Inc.*, 2009 WL 1458020, at *4 (M.D. Fla. May 26, 2009); *see also Chapman v. CKE Restaurants Holdings, Inc.*, 2020 WL 1230130, at *7 (E.D.N.C. Mar. 12, 2020) (ruling similarly).

of the TCPA and its implementing regulations. *See Carson*, 2022 WL 2954327, at *5; *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1316 (S.D. Fla. 2014). "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to ***physically place*** a telephone call, and generally does not include persons or entities, such as third-party [entities] that might merely have ***some role***, however minor, in the causal chain that results in the making of a telephone call." *In re Joint Petition filed by Dish Network, LLC*, 2013 WL 1934349, 28 F.C.C Rcd. 6574, 6583 ¶ 26 (emphasis added); *see also Gayle v. Bill Holt Automotive, Inc.*, 2023 WL 6192733, at *8 n.5 (N.D. Ga. July 10, 2023) (finding that the FCC's interpretation of the TCPA is entitled to deference). Thus, for direct TCPA liability to attach, Plaintiff must plausibly allege ***Powur itself—not a third party—physically took the steps to initiate calls to his number***. "Merely alleging that [a defendant] 'made' or 'initiated' [a] call is not sufficient to allege a [direct] TCPA [liability] claim." *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019).

Here, Plaintiff has not plausibly alleged that Powur actually, physically initiated the calls at issue for at least two reasons:

**First**, as was also the case in the original Complaint, Plaintiff does not allege any ***facts*** from which to infer that any of the calls originated from a phone number that "belongs" to Powur. Plaintiff's conclusory allegation that the phone number "[b]elongs to Defendant and/or its agent"—alleged only "upon information and belief"—is insufficient to avoid dismissal. *See* FAC ¶¶ 32–33*; see also Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *5-6 (S.D.N.Y. Feb. 6, 2023) (dismissing with prejudice, finding allegation that defendant "own[ed] or operate[ed] the telephone number from which the offending call originated" entirely conclusory); *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (allegations that "[d]efendant contacted or attempted to contact [plaintiff] from multiple telephone numbers confirmed to belong to Defendant" insufficient to justify that the call

actually came from defendant); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (finding no direct liability where "there [were] no factual allegations that [d]efendant actually made the telephone call at issue," and holding that "[t]he mere conclusion that the [dialer used] belonged to [d]efendant, without any factual allegations to support that conclusion, does not constitute a factual allegation that, if proven, would establish that [d]efendant 'made,' or 'physically placed' the call").

  **<u>Second</u>**, Plaintiff does not allege that any caller identified themselves as an employee or agent of Powur or tried to sell him Powur products or services during any of the calls. Instead, Plaintiff alleges that after one of the calls, he received an email from "Victor Hidalgo," who Plaintiff concludes is an "agent" of Powur. FAC ¶ 34. However, the FAC alleges no ***facts*** to support this conclusion. It alleges only that the email originated from a gmail account unassociated with Powur and "contained" unspecified "information about" Powur. *Id.* ¶ 34.  To be sure, Plaintiff alleges that the email included four attachments, all of which displayed Powur's logo and contained generic messages such as "Powur your life with solar!" *Id.* ¶ 36.  But the text of the attachments does not support Plaintiff's claim that Hidalgo was an agent of Power. Instead the exhibits reflect that these attachments were all-purpose marketing materials that could have been forwarded to or from anyone rather than materials prepared by or on behalf of Powur for Plaintiff. One attachment allegedly discussed tax credits, another consisted of a marketing call-to-action urging people who do not have solar panels to "[c]all me [sic] today to find out how YOU can save more than ever with a Powured Home," and yet another was ostensibly intended for a preexisting customer of Powur and contained the following: "Welcome to Powur Care.  Protect your solar investment with our comprehensive 30-year solar warranty.  **Now that you've chosen clean energy for your home, you deserve total peace of mind from Powur's comprehensive coverage on your new solar system**." *Id.* ¶¶ 35, 37–38 (emphasis added).  These

allegations about Hidalgo's emails are insufficient to support a plausible inference that Powur, as opposed to a third-party, physically initiated the *calls* at issue. This remains true even assuming *arguendo* the caller solicited Powur's solar energy equipment during the calls. *See, e.g., Wick v. Twilio Inc.*, 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) ("The FCC recognizes that merely offering a good or service for sale does not mean that a retailer initiates the marketing calls for that product" for direct TCPA liability purposes); *Hamilton v. El-Moussa*, 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020) (email from defendant received after at-issue call insufficient for vicarious liability).

Accordingly, Plaintiff's conclusory allegations are inadequate to state a claim for direct TCPA or FTSA[4] liability, and the FAC should be dismissed in its entirety under Rule 12(b)(6) on this basis alone.

### 2. Plaintiff Fails to Plausibly Allege Vicarious Liability Against Powur.

The FCC has concluded that vicarious liability under federal common law agency principles is available for violations of section 227(b) of the TCPA under certain circumstances. *See In Re Joint Petition Filed by Dish Network, LLC,* , 28 F.C.C. Rcd. 6574, 6586 (2013). Vicarious liability in any context requires a special consensual relationship between a principal and an agent. *See* Restatement (3d) of Agency ("Restatement") § 1.01, cmt. c ("[T]he concept of agency posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and

---

[4] The FTSA also contemplates a defendant's direct and vicarious liability. *See Gayle*, 2023 WL 6192733, at *9; *see also Martinolich v. Golden Leaf Mgmt., Inc.,* 786 So.2d 613, 615 (Fla. 3d DCA 2001) ("Florida courts often look to federal decisions as a guide to interpreting state statutes that are similar to federal ones.") (citations omitted).

duties of the other person."). This requires "more than mere passive permission; it involves request, instruction, or command." *Linlor v. Five9, Inc.*, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017). And "[t]hough 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.'" *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *5 (N.D. Cal. Mar. 28, 2018) (citation omitted).

Further, while the touchstone of agency is "control," <u>general</u> control over an agent is not enough. Instead, Plaintiff must plead specific non-conclusory facts suggesting Powur had control over the "manner and means" of the calls at issue. *See, e.g.*, *In re: Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514, 520 (N.D. W.Va. 2016), *aff'd sub nom.* 885 F.3d 243 (4th Cir. 2018) ("[I]n order to prove actual agency, the plaintiff must show that the defendant controlled or had the right to control the purported agent and, ***more specifically, the manner and means of the solicitation campaign that was conducted***.") (emphasis added); *see also Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *3 (N.D. Tex. June 13, 2023) (ruling similarly).

As noted above, Plaintiff contends the calls originated from a third party named "Victor Hidalgo," but he provides no facts from which to infer that Powur had an agency relationship with "Victor Hidalgo" or that Powur directed, controlled, or had knowledge of any calling campaigns this individual may have initiated.[5] *See, e.g.,   FAC* ¶¶ 33-34, 39. Courts routinely dismiss similarly

---

[5] To the extent Plaintiff was attempting to allege a ratification theory of vicarious liability against Powur by adding a single paragraph (FAC ¶ 29), he failed. Not only are his allegations on that front likewise entirely conclusory, but also to successfully plead such a theory, "the principal-agent relationship is a pre-requisite for ratification." *Cabrera*, 452 F.Supp.3d at 1320–21 (citing *Thomas*

deficient claims premised on vicarious liability at the pleadings stage. *See, e.g., Hirsch v. Lyndon S. Ins. Co.*, 2019 WL 5110622, at *6 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom. Hirsch v. Ensurety Ventures, LLC*, 2019 WL 8370863 (M.D. Fla. Aug. 6, 2019), *aff'd*, 805 F. App'x 987 (11th Cir. 2020) (dismissing, holding the FCC "has explicitly rejected a theory of liability under the TCPA against the seller of a product for telephone calls marketing that product absent an agency or similar relationship between the seller and the caller"); *Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (dismissing where "allegations of vicarious liability [we]re conclusory in nature").

The FAC should be dismissed in its entirety on this additional basis. *See, e.g., Abramson*, 2015 WL 12564318, and *Hirsch,* 2019 WL 5110622.

**C.      Plaintiff's FTSA Claim Should Also be Dismissed Under Rule 12(b)(6).**

Plaintiff's FTSA claim should also be dismissed under Rule 12(b)(6) because (1) Section 8(a) of the FTSA is facially unconstitutional; and (2) permitting Plaintiff to recover under both the TCPA and FTSA for the same alleged injury would amount to an improper double recovery.

**1.      The FTSA is facially unconstitutional.**

"A facial challenge asserts that a law always operates unconstitutionally." *Harris,* 564 F.3d at

---

*v. Taco Bell Corp.*, 582 F. App'x. 678, 680 (9th Cir. 2014) ("ratification can have no meaning without" the principal-agent relationship). In other words, ratification also requires pleading "actual authority" (*i.e.*, alleging specific facts demonstrating the defendant had "control" over the caller and the manner and means of the calls at issue), even in the TCPA context. *See id.* at 1321 (granting summary judgment in TCPA case on ratification theory when plaintiff's claim was "insufficient to establish an agency relationship").

1308 (internal quotations and citation omitted). The usual Rule 12(b)(6) analysis is streamlined in cases where, as here, a party asserts facial challenges to the constitutionality of a state statute, which is a purely legal question. *See, e.g., Bell v. City of Winter Park*, 745 F.3d 1318, 1323 (11th Cir. 2014) (affirming dismissal of complaint asserting facial challenge to Florida statute as legally insufficient, without regard to specific facts alleged).

           a.      **The FTSA violates the Dormant Commerce Clause.**

    "The [dormant] Commerce Clause grants to Congress the power to regulate interstate and foreign commerce." *Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*, 703 F.3d 1230, 1243 (11th Cir. 2012) (citing U.S. Const. art. I, § 8, cl. 3). "[T]his affirmative grant of authority to Congress also encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 326 n.1 (1989). In determining whether a law violates the dormant Commerce Clause, the Court must consider (i) whether the state law "directly regulates or discriminates against interstate commerce, or has the effect of favoring in-state economic interests," and (ii) whether the state law "unduly burden[s] interstate commerce." *Fla. Transp.,* 703 F.3d at 1243–44. "[A] state law that has the 'practical effect' of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause." *Healy*, 491 U.S. at 332. Moreover, a state's power to enact legislation is limited and "[a]ny attempt 'directly' to assert extraterritorial jurisdiction over persons or property would offend sister States and exceed the inherent limits of the State's power." *Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982) (citations omitted). Thus, as one court in this Circuit aptly noted, "[s]tatutes that have the practical effect of controlling conduct beyond the boundaries of the state are 'invalid regardless of whether the statute's extraterritorial reach was intended by the legislature.'" *TelTech Sys., Inc. v. McCollum*, 2009 WL 10626585, at *8 (S.D. Fla. July 16, 2009) (citing *Healy*).

    *McCollum* is particularly instructive here. In that case, a Florida statute prohibiting persons

from causing false caller ID information to be displayed to call recipients "had the practical effect of regulating commerce that occur[red] wholly outside the state of Florida" and thus violated the Commerce Clause because it "[wa]s impossible for [the callers] to determine whether the recipient of a call [wa]s in Florida"; thus, "[t]he logical consequence of this impossibility [wa]s that [the callers] [we]re unable to offer Caller ID spoofing services anywhere in the country without risking criminal liability under Florida's statute." *Id.* at *8. The same logical consequence follows from the FTSA.

The FTSA defines "telephone solicitor" as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, *doing business in this state*, who makes or causes to be made a telephonic sales call." Fla. Stat. § 501.059(1)(i) (emphasis added). "Doing business in this state" includes "businesses that conduct telephonic sales calls from a location in Florida *or from other states or nations to consumers located in Florida*." *Id.* § (1)(e) (emphasis added). The definition of "consumer" likewise contains no limitation to Florida residents. *Id.* § (1)(b). The statute also contains a rebuttable presumption that a call "made to any area code in this state is made to a Florida resident or to a person in this state at the time of the call." *Id*. § (8)(d).

Applying *McCollum* to the FTSA, "the increased use of mobile phones and call forwarding" makes it impossible for callers to be certain whether the party they are calling is or is not located in Florida. 2009 WL 10626585, at *2. For example, a business located in California might place a "telephonic sales call" to a telephone number with a New York area code, but the call recipient may be located or reside in Florida. That business would be liable for violating the FTSA even if they had no way of determining the recipient's actual location or residence. *Id*. at *8. Likewise, because the FTSA presumes that all calls to Florida area codes are made to Florida residents or individuals located in the state, businesses must presume all calls to Florida area codes are subject to the FTSA *even if* the recipient might actually receive the call and/or reside in another state. Consequently, the FTSA makes

it impossible for businesses to make calls to consumers anywhere in the country without risk of liability under this Florida statute, effectively requiring those businesses to comply with the FTSA for all such calls to consumers everywhere. A restriction with such practical effect blatantly violates the Commerce Clause. *See Booth v. Appstack, Inc.*, 2015 WL 1466247, at *14-16 (W.D. Wash. Mar. 30, 2015) (declining to certify class under Washington statute, which included all calls made to numbers with Washington area codes, because "the fact that a number with a Washington State area code was dialed does not necessarily mean that the call was received in Washington State" and permitting the statute to apply to calls initiated and received outside the state "would render the [statute] unconstitutional under the dormant Commerce Clause").

The Florida legislature recognized that the presumption regarding Florida area codes may have extra-territorial consequence. *See* Florida Senate Bill Analysis and Fiscal Impact Statement for CS/SB 1120 at 10, available at https://www.flsenate.gov/Session/Bill/2021/1120/Analyses/2021s01120.rc.PDF (last visited Oct. 24, 2023) (citing *McCollum* and noting: "It is unclear whether the bill's presumption regarding Florida area codes will have an effect on interstate commerce to an extent that has the practical effect of regulating commerce outside of Florida's borders.").

In sum, the FTSA "ha[s] the practical effect of regulating commerce that occurs wholly outside the state of Florida" in violation of the dormant Commerce Clause. *McCollum*, 2009 WL 10626585, at *8.[6] Thus, Section 8(a) of the FTSA should be invalidated as unconstitutional. *See Barr v. Am. Ass'n*

---

[6] *See also SpoofCard, LLC v. Burgum*, 499 F. Supp. 3d 647, 656 (D.N.D. 2020) (finding state anti-spoofing calling statute "effectively regulates how [p]laintiffs engage in their interstate commerce" in violation of the dormant Commerce Clause because it was impossible to determine the location

*of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2348 (2020). Count II should be dismissed with prejudice on these additional grounds.

> **b.      Recent non-binding decisions on the FTSA's constitutionality do not help Plaintiff avoid dismissal in this case.**

In response, Plaintiff may rely on four non-binding district court decisions (*Turizo*, *Pariseau*, *Borges*, and *Zononi*)[7] regarding the constitutionality of the FTSA. This Court should not blindly adopt those flawed decisions or forego its own independent constitutional analysis. In fact, three of the four cases (*Pariseau*, *Borges*, and *Zononi*) do not address the Commerce Clause issue above and both rely heavily, if not exclusively, on *Turizo*, which—respectfully—was wrongly decided in a number of key respects.

Indeed, the court's analysis in *Turizo* was predominately preoccupied with the FTSA's preemption by the TCPA, which Powur does not argue here. *See* 2022 WL 2919260, at *6-8. Additionally, the *Turizo* court incorrectly assumed that mere compliance with the automated calling provision of the FTSA was sufficient to avoid dormant Commerce Clause implications. Not so. This assumption fails to acknowledge that it is actually *the need for compliance with the FTSA* in the first instance that unduly burdens calls made to individuals *wholly outside of Florida* and makes the FTSA unconstitutional under the dormant Commerce Clause. *See* 2022 WL 2919260, at *8-12. As discussed

---

of the call recipient; therefore, "[p]laintiffs must either conduct all of their business in a certain way to avoid liability in North Dakota or, more likely, cease spoofing altogether").

[7] *See generally Turizo v. Subway Franchisee Advert. Fund Tr. Ltd*., 2022 WL 2919260 (S.D. Fla. May 18, 2022); *Pariseau v. Built USA, LLC,* 2022 WL 3139243 (M.D. Fla. Aug. 5, 2022); *Borges v. SmileDirectClub, LLC*, 2022 WL 4269564 (S.D. Fla. Sept. 15, 2022); *Zononi v. CHW Grp., Inc.*, 2023 WL 2667941 (S.D. Fla. Mar. 7, 2023).

above (*see* Section IV.D.1.a, *supra*), the widespread use of cell phones makes it impossible for callers to be certain whether the party they are calling is or is not located in Florida. Thus, businesses must *assume* that any potential recipient *could be* located in Florida or risk violating the FTSA. The logical consequence is that even businesses that do not place calls to Florida residents must comply with the FTSA. This Court should reject *Turizo* outright.

### 2.    Plaintiff impermissibly seeks "double recovery" under the FTSA.

Even if the Court finds that the FTSA is not unconstitutional, Plaintiff's FTSA claim should nonetheless be dismissed because Plaintiff impermissibly seeks double recovery under the TCPA and FTSA for the same calls.

It is axiomatic that a plaintiff may not receive a double recovery under different legal theories for the same injury. *Coton v. Televised Visual X-Ography, Inc*., 740 F. Supp. 2d 1299, 1310 (M.D. Fla. 2010) ("A plaintiff seeking compensation for the same injury under different legal theories is of course entitled to only one recovery.") (citing *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2nd Cir. 1995), *cert. denied*, 519 U.S. 1041, 136 L.Ed.2d 535 (1996)); *MCA Television Ltd. v. Pub. Int. Corp.*, 171 F.3d 1265, 1274 (11th Cir. 1999) (alleging two theories of recovery when only one injury had been suffered amounted to double recovery).

Applied here, Plaintiff seeks relief in Count II (*see* FAC ¶¶ 71–76) under the FTSA's automated calling provision, which is designed to prevent telephonic sales calls to individuals using a prerecorded message without the individual's prior express written consent. Just like the TCPA, the FTSA also provides for statutory minimum damages of $500 per call for an initial violation. *See* Fla. Stat. § 501.059(10)(a). Thus, Plaintiff plainly seeks to recover *twice* for the *same* alleged injury in connection with the *same* alleged calls. Plaintiff is not entitled to double recovery; thus, Count II should be dismissed. *See, e.g., Infinity Transportation III LLC v. XPO Intermodal, Inc.*, 304 F. Supp. 3d 1320,

1329 (N.D. Ga. 2018) (dismissing claim for seeking damages for same alleged injury as another claim); *Yor-Wic Constr. Co. v. Eng'g Design Techs., Inc.,* 2019 WL 1412943, at *4 (W.D. La. Mar. 28, 2019) ("A claim can be dismissed as duplicative under Rule 12(b)(6) when it seeks identical damages as another claim asserted in the complaint.") (citations omitted); *see also Masters v. Wells Fargo Bank S. Cent.,* 2013 WL 3713492, at *3 (W.D. Tex. July 11, 2013) ("There is no indication in either the TCPA or in Texas's analogue [*i.e.,* TBCC § 305.053] that either legislative body intended to allow double recovery under both state and federal law for the same [alleged] TCPA violations.").

### D. Plaintiff's Faulty Proposed Class Definitions Should Be Stricken Under Rule 12(F) and 23.

The Court should also strike Plaintiff's faulty class definitions (FAC ¶ 54) and other class-related allegations under Rules 12(f) and 23 because: (1) Plaintiff's proposed definitions are impermissibly fail-safe; and (2) common questions of law and fact do not predominate.

#### 1. Defective class allegations may be stricken at the pleadings stage.

Courts in the Eleventh Circuit and elsewhere have widely recognized that they may (and, indeed, ***should*** in appropriate cases) strike faulty class allegations at the pleadings stage under Rule 12(f) where, as here, it is apparent from the face of the complaint that the proposed classes are not certifiable under Rule 23 as pleaded. *See, e.g., Foxx v. Ocwen Loan Servicing, LLC*, 2012 WL 2048252, at *9-10 (M.D. Fla. June 6, 2012); *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160 (1982); *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 695-702 (M.D. Ga. 2012) (granting motion to strike class allegations where pleadings did not indicate class certification was appropriate.).[8]

Courts routinely find proposed classes to be uncertifiable and strike them at the pleadings stage,

---

[8] *See also Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (recognizing that propriety of class certification may be "readily apparent" from the face of the complaint).

in TCPA cases, where, as here: (i) common questions of law and fact do not predominate; and/or (ii) the class definitions are impermissibly fail-safe. *See, e.g., Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *1-5 (C.D. Cal. Dec. 21, 2016); *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.,* 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018); *Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568, at *4-5 (E.D. Mo. Jan. 24, 2013).

### a.   Plaintiff's Class Definitions Are Impermissibly Fail-Safe.

A fail-safe class is one that includes only those putative class members who are entitled to relief and requires the Court to make a determination on the merits of putative class members' individual claims to determine membership. *See Fennell v. Navient Sols., LLC*, 2019 WL 3854815, at *3 (M.D. Fla. June 14, 2019). Such a proposed class is not permitted because it "shields the putative class members from receiving an adverse judgment" and "either the class members win or, by virtue of losing, they are not in the class, and therefore not bound by the judgment." *Balassiano v. Fogo De Chao Churrascaria (Orlando) LLC*, 2020 WL 7365264, at *3 (M.D. Fla. Dec. 15, 2020), *report and recommendation adopted*, 2021 WL 2019722 (M.D. Fla. Jan. 7, 2021) (citation omitted).

Here, Plaintiff's proposed classes are impermissibly fail-safe because membership in each depends on the merits of the putative class members' underlying claims. Indeed, the proposed classes include, *inter alia*, "[a]ll persons within the United States" (i) who received any solicitation or telemarketing call from Defendant who "had not previously consented to receiving such calls…" FAC ¶ 54. However, whether each putative class member "consented" to receiving calls from Defendant is a merits-based inquiry going directly to the heart of the underlying TCPA and FTSA claims here, and there is no objective way to determine who is a class member given Plaintiff's proposed classes as pleaded. Thus, Plaintiff's proposed classes are impermissibly fail-safe and, as such, properly stricken.

**b.      Common Questions of Law and Fact Do Not Predominate.**

To meet the predominance requirement, common questions must "present a significant aspect of the case" that "can be resolved for all members of the class in a single adjudication." *Bacon v. Stiefel Lab'ys, Inc.*, 275 F.R.D. 681, 695 (S.D. Fla. 2011) (citation omitted). "[P]redominance is lacking" where, as here, "whether the calls were consented to—a merits issue to both TCPA and FTSA claims— is not subject to generalized proof." *Newhart v. Quicken Loans Inc.*, 2016 WL 7118998, at *2 (S.D. Fla. Oct. 12, 2016).

Thus, courts often deny class certification in TCPA cases on predominance grounds where individualized determinations of "consent" would be needed. *See, e.g., New Concept Dental v. Dental Res. Sys., Inc.*, 2020 WL 3303064, at *9–10 (S.D. Fla. Mar. 3, 2020); *Newhart*, 2016 WL 7118998, at *2; *Balthazor v. Cent. Credit Servs., Inc.,* 2012 WL 6725872, at *4 (S.D. Fla. Dec. 27, 2012).

Courts also often strike class allegations at the pleadings stage and/or grant pre-discovery motions to deny certification, in TCPA cases and others, where individualized determinations of "consent" are needed. *See, e.g., Pepka,* 2016 WL 8919460, at * 4; *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017); *Dorfman v. Albertson's LLC*, 2020 WL 86192, at *5 (D. Idaho Jan. 7, 2020); *see also Baisden v. Credit Adjusts., Inc.*, 813 F.3d 338, 343 (6th Cir. 2016) (stating that "[t]he context of the consent provided is ***critical***" in a TCPA case) (emphasis added).

In this case, the manner in which the putative class members may have ***provided*** their "consent" may vary widely. Therefore, whether any calls were made without the consent of the Plaintiff and the putative class members is not a common question of law or fact that can be resolved by generalized proof across the entire class in a single adjudication; rather, it would necessitate individualized factual and legal inquires on the critical issue of consent, at the minimum. Thus, Plaintiff's proposed classes should be stricken on this additional basis.

## V.     <u>CONCLUSION</u>

For all the reasons above, the FAC should be dismissed in its entirety under Rule 12(b)(1) and/or 12(b)(6), or alternatively, the defective class and other allegations identified above should be stricken under Rules 12(f) and/or 23.

### <u>Local Rule 7.1(a)(3) Certification</u>

The undersigned certifies that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

/s/ Yaniv Adar
Yaniv Adar
Florida Bar No. 63804

Dated:  October 26, 2023                         Respectfully Submitted,

**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440

By: *s/ Yaniv Adar*
Josh A. Migdal, Esq.
Florida Bar No. 19136
josh@markmigdal.com
Yaniv Adar, Esq.
Florida Bar No. 63804
yaniv@markmigdal.com
eservice@markmigdal.com

*Attorneys for Defendant Powur, PBC, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on October 26, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties, via their counsel of record, by operation of the Court's electronic filing and docketing system.

/s/ Yaniv Adar

Yaniv Adar